IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ACE QUICK LUBE, INC., on behalf of itself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) Civil Action No. ) ) |
| v. | ) ) |
| | ) **CLASS ACTION COMPLAINT** |
| CHAMPION LABORATORIES, INC.; PUROLATOR FILTERS N.A. L.L.C.; HONEYWELL INTERNATIONAL INC.; WIX FILTRATION CORP. LLC; CUMMINS FILTRATION INC.; THE DONALDSON COMPANY; BALDWIN FILTERS INC.; BOSCH U.S.A.; MANN + HUMMEL U.S.A., INC.; and ARVINMERITOR, INC., | ) ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Plaintiff Ace Quick Lube, Inc. ("Plaintiff"), on behalf of itself and all others similarly situated in the class defined below, brings this action for treble damages under the antitrust laws of the United States against Champion Laboratories, Inc.; Purolator Filters N.A. L.L.C.; Honeywell International Inc.; Wix Filtration Corp. LLC; Cummins Filtration, Inc.; The Donaldson Company; Baldwin Filters, Inc.; Bosch U.S.A.; Mann + Hummell U.S.A., Inc.; and ArvinMeritor, Inc. (collectively, "Defendants"), and alleges as follows upon information and belief:

**JURISDICTION AND VENUE**

1. Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, equitable relief, expenses and costs of suit for

injuries sustained by Plaintiff and the Class resulting from violations by Defendants of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Subject matter jurisdiction is proper pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C. § 1331 and 1337, because the action arises under the laws of the United States.

2.  Defendants are found or transact business within this district and Defendants' interstate trade and commerce is carried out, in substantial part, in this district. Venue therefore lies within this district under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c).

3.  This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped and delivered substantial quantities of Filters throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

4.  Jurisdiction over all Defendants comports with the United States Constitution, and 15 U.S.C. §§ 15, 22 and 26.

## DEFINITIONS

5.  "Filters" includes, among other things, replacement oil, air, fuel and transmission filters manufactured by the Defendants.  Filters are utilized to remove contaminants from combustion engines and related systems.  Oil filters remove contaminants from the motor oil used to lubricate an engine's pistons; fuel filters primarily screen dirt and rust particles from an engine's fuel lines; air filters prevent particulate matter from entering an engine's cylinders; and transmission filters ensure the proper functioning of an engine's transmission systems.

## THE PARTIES

6.     Plaintiff Ace Quick Lube, Inc., is a Pennsylvania corporation with its principal place of business at 658 Pittsburgh Street, Uniontown, PA 15401.  Plaintiff purchased Filters in the United States directly from one or more of the Defendants during the Class Period, and has suffered antitrust injury as a result of Defendants' unlawful conduct as alleged in this Complaint.

7.     Defendant Purolator Filters N.A. L.L.C. is headquartered in Fayetteville, North Carolina, with a principal mailing address of 2800 South 25th Ave., Broadview, Illinois 60565.  Purolator Filters N.A. L.L.C. is a joint venture between Bosch U.S.A. and Mann + Hummel U.S.A., Inc.  During the time period covered in this complaint, Defendant manufactured, sold and distributed Filters throughout the United States.

8.     Defendant Bosch U.S.A. is headquartered in Broadview, Illinois, with its business address at 2800 S. 25th Ave., Broadview, Illinois 60155.  During the time period covered in this complaint, Defendant manufactured, sold and distributed Filters throughout the United States.

9.     Defendant Mann + Hummel U.S.A., Inc., is headquartered in Portage, Michigan, with its business address at 6400 S. Sprinkle Road, Portage, Michigan 49002.  During the time period covered in this complaint, Defendant manufactured, sold and distributed Filters throughout the United States.

10.     Defendant ArvinMeritor, Inc. is headquartered in Troy, Michigan, with its address at 2135 West Maple Road, Troy, Michigan 48084.  During the time period covered in this complaint, Defendant manufactured, sold and distributed Filters throughout the United States.  ArvinMeritor, Inc. owned Purolator Filters N.A. L.L.C. from January 1999 through March 2006.  Thereafter, it sold Purolator Filters N.A. L.L.C. to Bosch U.S.A. and Mann + Hummel U.S.A., Inc.  Hereinafter, Purolator Filters N.A. L.L.C.; Bosch U.S.A.; Mann + Hummel U.S.A., Inc.; and

ArvinMeritor, Inc. are collectively referred to as "Purolator."

11.     Defendant Champion Laboratories, Inc. ("Champion") is headquartered at Albion, Illinois, with its business address at 200 S. Fourth St., Albion, Illinois 62806. During the time period covered in this complaint, Defendant manufactured, sold and distributed Filters throughout the United States.

12.     Defendant Wix Filtration Corp. LLC ("Wix") is headquartered in Gastonia, North Carolina with its address at 1101 Technology Drive, Ann Arbor, Michigan 48108 listed with the North Carolina Secretary of State. During the time period covered in this complaint, Defendant manufactured, sold and distributed Filters throughout the United States.

13.     Defendant Honeywell International, Inc., ("Honeywell") is headquartered in Morristown, New Jersey, with its business address located at 101 Columbia Road, Morristown, New Jersey 07962. During the time period covered in this complaint, Defendant manufactured, sold and distributed Filters throughout the United States.

14.     Defendant Cummins Filtration, Inc., ("Cummins") is headquartered in Nashville, Tennessee, with its business address located at 2931 Elm Hill Pike, Nashville, Tennessee 37214. During the time period covered in this complaint, Defendant manufactured, sold and distributed Filters throughout the United States.

15.     Defendant The Donaldson Company ("Donaldson") is a corporation headquartered in Minneapolis, Minnesota, with its business address located at 1400 W. 94th St., Minneapolis, Minnesota 55431. During the time period covered in this complaint, Defendant manufactured, sold and distributed Filters throughout the United States.

16.     Defendant Baldwin Filters, Inc. ("Baldwin") is headquartered in Kearney, Nebraska, with its business address located at 4400 E. Hwy. 30, Kearney, Nebraska 68848.

During the time period covered in this complaint, Defendant manufactured, sold and distributed Filters throughout the United States.

## CO-CONSPIRATORS

17. Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

18. The acts alleged in this Complaint to have been done by Defendants were authorized, ordered and condoned by their parent corporations and authorized, ordered and performed by their officers, directors, agents, employees, or representatives while engaged in the management, direction, control or transaction of their business affairs.

19. Various other persons, firms, and corporations not named as Defendants have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure, Rules 23(a) and (b)(3) on behalf of the following class (the "Class"):

> All individuals or entities who, during the period from January 1, 1999 through the present, purchased Filters in the United States directly from the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest, at any time. Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries or affiliates and all entities owned by the federal government.

21. Plaintiff does not know the exact number of Class members because such

information is in the exclusive control of Defendants or their coconspirators. Due to the nature of the trade and commerce involved, however, Plaintiff believes that Class members number at least in the hundreds if not thousands and thus are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all members is impracticable.

22. Plaintiff is a member of the Class, and Plaintiff's claims are typical of the claims of members of the Class as Plaintiff and all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the antitrust laws. All members of the Class have paid artificially inflated prices for Filters. Additionally, all members of the Class were harmed because Defendants' anticompetitive practices deprived the Class members of competitive markets for Filters.

23. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation.

24. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Such common questions of law and fact include:

    a. Whether Defendants and their co-conspirators engaged in a conspiracy to fix, raise, maintain or stabilize the price of Filters;

    b. Whether Defendants' wrongful conduct caused antitrust injury to Plaintiff and the other members of the Class;

    c. Whether the unlawful conduct of Defendants caused Plaintiff and the other Class members to pay more for Filters than they otherwise would have paid absent Defendants' conduct;

    d. The appropriate Class-wide measure of damages; and

    e. The appropriate scope of injunctive relief.

25. Plaintiff knows of no difficulty that would prevent this case from being

maintained as a class action and class action treatment is a superior method for the fair and efficient adjudication of this controversy. Class action treatment will, among other things, allow a large number of similarly situated persons and/or entities to prosecute their common claims in a single forum, thus avoiding the unnecessary duplication of resources that numerous individual actions would require. Moreover, class action treatment allows injured persons the ability to seek redress on claims that might be impracticable to pursue individually.

## TRADE AND COMMERCE

26.　At all material times, Defendants provided Filters to their customers across state lines.

27.　During the relevant time period, in connection with purchase and sale of Filters, monies, as well as contracts, bills and other forms of business communication and transactions, were transmitted in continuous and uninterrupted flow across state lines.

28.　During the relevant time period, various devices were used to effectuate the illegal acts alleged herein, including the United States mail, interstate travel, and interstate commerce. The activities of Defendants as charged in this Complaint were within the flow of, and have substantially affected, interstate commerce.

## THE FILTERS INDUSTRY

29.　Filters are utilized to remove contaminants from combustion engines and related systems. Filters become less effective over time as contaminants are filtered out of the respective engine systems, and they are designed to be replaced periodically. Replacement filters are purchased to replace original equipment filters included in new motors.

30.　Oil, air, fuel and transmission filters are primarily sold into two separate channels: (i) to Original Equipment Manufacturers ("OEM") and (ii) to aftermarket sellers of replacement Filters

("Aftermarket Sellers").

31. OEMs purchase filters for use in connection with new vehicles. These filters are installed in vehicles during the production process.

32. The United States Filters markets are highly concentrated, with just a handful of major producers manufacturing and producing these products. This concentration, as well as interlocking business arrangements, assisted Defendants in successfully implementing their conspiracy. For example, in April 2006, Defendant ArvinMeritor sold Defendant Purolator to Defendants Bosch and Mann + Hummel. Defendants Bosch and Mann + Hummel now operate Defendant Purolator as a joint venture. Mann + Hummel, CEO Dieter Seipler has stated that "it was a natural alliance because Bosch is a major private-brand customer for Mann + Hummel in Europe and in other regions of the world."

33. Annual revenues for Filters markets in the United States are approximately $3 billion to $5 billion.

34. On January 19, 2006, William G. Burch, former employee of both Purolator N.A. L.L.C. and Champion Laboratories, Inc. ("Champion"), filed a complaint against Champion in state court in Tulsa, Oklahoma, alleging, among other things, that Mr. Burch was wrongfully terminated from his employment with Champion for knowing about, and subsequently reporting to authorities, the antitrust violations alleged in the Pending Actions.

35. On March 25, 2008, Burch, a former National Accounts and Division Sales Manager for Defendant Champion, executed an affidavit under oath in *Champion Laboratories. Inc. v. Burch*, 06-CV-4031 (JPG) (S.D. Ill.). This affidavit, which is made on the basis of personal knowledge, states as follows:

> a. Burch "became aware that Champion was involved in activities with Champion's competitors that constitute price-fixing. For example, Champion provided information concerning price increases to competitors

8

    before it provided that information to consumers or to the general public. Champion was also given advance information about price increases by its competitors. Further information is set forth accurately and in detail in the mediation statement dated September 21, 2007, that I understand will be filed under seal in this case."

  b. Burch also stated that "[d]uring the time I worked for Champion, I was directed by Champion to conduct discussions regarding 'pricing' with employees of competitors of Champion. I refused to conduct those discussions."

36. Many of the allegations contained herein, particularly those with respect to the specifics of meetings between the Defendants, are based on alleged recorded conversations and the personal knowledge of this former employee.

37. As a Division Sales Manager responsible for monitoring and coordinating terms of sales, the former employee was privy to, among other things, exchanges of confidential pricing materials by which Defendants unlawfully agreed to the timing and magnitude of price increases throughout the Class period. These include, among other acts, the following:

  a. on June 28, 1999, a Purolator executive faxed an executive at Honeywell a letter which announced a 6% increase on all Purolator branded filters effective August 15, 1999, but did not send a price increase notification to Purolator's customers until July 1999;

  b. at a trade convention called the Heritage Show in May 1999, representatives of Defendants agreed in person, on behalf of their respective employers, to raise prices for Filters, and Defendants later raised prices in accordance with the wrongful agreements reached at the Heritage Show;

  c. in February 2004, Champion's President informed his sales team that Champion was about to raise prices and told them to make sure Champion's "competitors" were aware of the increase and adjusted their prices accordingly, both in timing and amount, pursuant to wrongful agreements previously reached, which the employees accomplished by meeting with Defendants' representatives;

      d.      in 2004, an internal Champion e-mail with the subject line "Price Increases" confirmed that the other Defendants were in agreement regarding a coordinated price increase; and

      e.      pursuant to the unlawful agreement, Defendants each instituted similar price increases, in amounts of approximately 4-6%, at the same times.

38. Defendants engaged in repeated in-person meetings to further their anticompetitive scheme. Many of these meetings occurred at the annual Filter Manufacturers Council meeting in Nashville, Tennessee. The Filter Manufacturers Council is a trade organization comprised of the Defendants and other industry participants.

39. In recent filings with the Securities and Exchange Commission, Defendants ArvinMeritor, Champion (via its parent company United Components, Inc.) and Honeywell disclosed that the Department of Justice Antitrust Division is investigating the allegations raised herein and has issued subpoenas to certain employees of the Defendants, including ArvinMeritor, Champion and Honeywell.

## VIOLATIONS ALLEGED

40. Beginning at least as early as January 1, 1999 and continuing thereafter, Defendants and their co-conspirators, by and through their officers, directors, employees, agents, or other representatives, entered in a continuing contract, combination or conspiracy in restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

41. The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and/or allocate the market for, Filters sold in the United States and elsewhere.

42. As a result of their unlawful actions, Defendants were able to force coordinated

price increases on the Filters markets.

43. Defendants' unlawful conduct took many forms, including but not limited to:

    a. attending meetings and/or otherwise exchanging information regarding the pricing and sale of Filters;

    b. selling Filters to customers at collusive and non-competitive prices;

    c. agreeing to sell Filters at specified; pre-arranged prices;

    d. agreeing not to compete for each other's customers;

    e. accepting payment at non-competitive prices;

    f. giving actual and/or apparent authority to employees' participation in furtherance of the wrongful conduct; and

    g. fraudulently concealing the wrongful conduct.

44. Defendants' wrongful conduct in manipulating prices was undertaken in order to charge artificially inflated prices for their Filters.

45. As a direct result of the unlawful conduct of Defendants and their co-conspirators in furtherance of their continuing contract, combination, or conspiracy, Plaintiff and other members of the Class have been injured in their business and property in that they have paid more for Filters than they would have paid in the absence of Defendants' and its co-conspirators' price fixing.

### **EFFECTS**

46. The above combination and conspiracy has had the following effects, among others:

    a. price competition in the sale of Filters by Defendants and their co-conspirators has been restrained, suppressed and eliminated throughout the United States;

        b.        prices for Filters sold by Defendants and their co-conspirators have been raised, fixed, maintained and stabilized at artificially high and noncompetitive levels throughout the United States; and

        c.        purchasers of Filters from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

47.    As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, Plaintiff and other members of the Class have been injured in their business and property in that they paid more for Filters than they otherwise would have paid in the absence of the unlawful conduct of Defendants and their co-conspirators.

## DAMAGES

48.    During the Class Period, Plaintiff and the other members of the class purchased Filters directly from Defendants, or their subsidiaries, agents, or co-conspirators, and by reason of the antitrust violations herein alleged, paid more for such products than they would have paid in the absence of such antitrust violations. As a result, Plaintiff and the other members of the Class have sustained damages to their business and property in an amount to be determined at trial.

## FRAUDULENT CONCEALMENT

49.    Plaintiff and other members of the Class had no knowledge of Defendants' unlawful scheme and could not have discovered Defendants' unlawful conduct at an earlier date by the exercise of due diligence. Defendants affirmatively concealed their illegal acts and these acts only recently became known to the public through filings in the aforementioned litigation in the Southern District of Illinois. As a result of Plaintiff's lack of knowledge of the effects of Defendants' unlawful scheme, Plaintiff asserts the tolling of any applicable statutes of limitations affecting the right of action by Plaintiff and other members of the Class.

50. Moreover, Defendants' actions constitute a continuing violation in that Defendants' anticompetitive practices resulted in unlawfully priced Filters, and each and every such transaction at artificially inflated prices is an overt act that injured Plaintiff and other members of the Class. These artificially inflated prices continue to exist in the relevant markets as Defendants' have yet to cease their unlawful conduct. Upon each and every instance that Defendants failed to disclose their illegal conduct and their effect on the prices paid by Plaintiff and the Class, Defendants knew or should have known that the undisclosed information was material to those who purchased such products.

51. In addition, Defendants committed numerous additional overt acts in furtherance of their conspiracy, both within and prior to four years from the date of the filing of this Complaint. Such overt acts include the illegal meetings and communications regarding Filter prices described herein.

52. Therefore, each instance in which Defendants engaged in the conduct complained of herein and each instance in which a Class member unknowingly paid supra-competitive prices for Filters constitutes part of a continuing violation and operates to toll any applicable statutes of limitation. Furthermore, Defendants are estopped from relying on any statute of limitations defense because of their unfair and deceptive conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of itself and the Class, respectfully prays:

A. that this Court declare this action to be a proper class action under Fed. R. Civ. P. 23(b)(3) on behalf of the Class as defined herein, and direct that reasonable notice of this action, as provided by Fed. R. Civ. P. 23(c)(2), be given each member of the class;

B. that this Court declare the unlawful combination and conspiracy alleged herein to be an unreasonable restraint of trade of commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C. that this Court enjoin, preliminarily and permanently, Defendants from continuing the unlawful combination and conspiracy alleged herein;

D. that this Court award Plaintiff and each member of the Class damages, as provided by law, and that joint and several judgments in favor of Plaintiff and each member of the Class be entered against Defendants and each of them in an amount to be trebled in accordance with the antitrust laws;

E. that this Court award Plaintiff and the Class the costs of this suit (including expert fees), and reasonable attorneys fees, as provided by law; and

F. that this Court award such other and further relief as the nature of this case may require or as may be just, equitable and proper to this Court.

## JURY DEMAND

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff demands a trial by jury of all issues so triable.

Date: August 27, 2008    By:    /s/ Douglas A. Millen
Michael J. Freed (ARDC No. 0869120)
Steven A. Kanner (ARDC No. 3125292)
William H. London (ARDC No. 6196353)
Douglas A. Millen (ARDC No. 6226978)
**FREED KANNER LONDON
 & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
mfreed@fklmlaw.com; skanner@fklmlaw.com;
wlondon@fklmlaw.com; dmillen@fklmlaw.com

14

        David J. Manogue
        Megan L. Faust
        **SPECTER SPECTER EVANS**
        **& MANOGUE, P.C.**
        436 Seventh Avenue
        The 26th Floor Koppers Building
        Pittsburgh, PA   15219
        dmanogue@ssem.com; mfaust@ssem.com

        ***Counsel for Plaintiff ACE QUICK LUBE,***
        ***INC. and the Proposed Class***